**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

MATTHEW BECK,

                                                    Civil No. 22-3224 (JRT/LIB)

                              Plaintiff,

v.                                    **MEMORANDUM OPINION AND ORDER**
                                      **GRANTING DEFENDANT'S MOTION FOR**
                                      **SUMMARY JUDGMENT AND DENYING**
BETTY DOLLINGER,                      **PLAINTIFF'S MOTION TO DISMISS**

                              Defendant.

---

Ryan H. Ahlberg, **AHLBERG LAW, PLLC**, 333 Washington Avenue North, Suite 300, Minneapolis, MN 55401, for Plaintiff.

Beverley Adams, **FREDRIKSON & BYRON**, 51 Broadway, Suite 400, Fargo, ND 58102, for Defendant.

Matthew Beck filed this action in Minnesota state court against his former employer, American Crystal Sugar Company ("American Crystal"), and one of its employees, Betty Dollinger, following his termination. The Defendants removed the action to this Court under federal question jurisdiction. Thereafter, the parties stipulated to the dismissal of American Crystal and a federal discrimination claim, leaving only a state tortious interference of contract claim against Dollinger.

Dollinger now moves for summary judgment on the remaining claim, and Beck moves to dismiss the action without prejudice. Because there are no genuine disputes of material fact and Beck's remaining claim fails as a matter of law, the Court will grant the Motion for Summary Judgment and deny the Motion to Dismiss as moot.

## BACKGROUND

### I.      FACTS

The dispute in this action centers on Beck's employment record at American Crystal and an interaction he had with Dollinger in August 2022 before his termination.

American Crystal is an agricultural cooperative that specializes in the production of sugar and related Agri-products. (*See* Notice of Removal ¶ 7, Ex. 1 ("Compl.") ¶ 2, Dec. 30, 2022, Docket No. 1.)[1]  Its corporate headquarters are located in Moorhead, Minnesota. (*Id.* ¶ 2.)  Betty Dollinger, a machinist, and Matthew Beck, a maintenance supervisor, both worked at the Moorhead factory. (*Id.* ¶¶ 3, 7; Decl. Beverley Adams ("Adams Decl."), Ex. 1 ("Beck Dep.") at 49, Dec. 29, 2023, Docket No. 20.)

During Beck's tenure, there were multiple complaints from other employees regarding Beck's inappropriate verbal and non-verbal conduct in the workplace, which in some cases resulted in employees resigning, threatening to resign, or transferring because of him. (*See, e.g.*, Beck Dep. Ex. 1 – Part 1 at 22; Beck Dep. Ex. 1 – Part 2 at 10, 29–31, 36–48, 55–59; Beck Dep. Ex. 1 – Part 3 at 75.)  Beck was placed on a development plan in 2020 to improve his professional conduct toward coworkers, but the complaints continued. (Beck Dep. Ex. 1 – Part 5 at 11–16.)  An anonymous report that Beck "intimidates his reports, swears at them, belittles them, and is a bully" prompted

---

[1]      *See also Our Company*, American Crystal Sugar Company, https://www.crystalsugar.com/our-company (last accessed August 12, 2024).

management to conduct an investigation in 2021.  (Beck Dep. Ex. 1 – Part 2 at 71–75.)
American Crystal notified Beck of the investigation's results and encouraged him to
improve his behavior.  (*Id.* at 74.)

Right before Beck went on a scheduled two-week medical leave for a hernia
operation in August 2022, tensions peaked during an interaction between Beck and
Dollinger.  (Beck Dep. at 31–32.)  Beck and Dollinger agree on the substance of the
conversation: they discussed the fact that Dollinger had not properly secured some of the
equipment she had been working on at the factory.  (*Id.* at 32–34.)  But they disagree on
the tone and language used.

By Dollinger's account, Beck was hostile during the interaction.  She reported to
management that Beck raised his voice and used expletives, and that she was shaken and
unable to concentrate on her work after the encounter.  (Beck Dep. Ex. 1 – Part 3 at 27–
28, 50.)  Beck denies yelling or using expletives.  (*Id.* at 52.)  Rather, he accuses Dollinger
of fabricating the entire interaction due to her alleged "ill-will and spite" toward him.
(Beck Dep. at 62–63.)

American Crystal investigated the incident by interviewing Beck, Dollinger, and six
other employees.  (Beck Dep. Ex. 1 – Part 3 at 50–53.)  Though there were no third-party
eyewitnesses to the incident, the other six interviewed employees corroborated
Dollinger's version of events based on their interactions with Beck or Dollinger shortly
after the incident.  (*See id.*)  American Crystal ultimately credited Dollinger's account and

concluded that Beck "created a hostile working environment by cursing and yelling at [Dollinger] . . . instead of conducting a fair, respectful investigation." (*Id.* at 53; *see also* Adams Decl. ¶ 4, Ex. 7 ("Diers Dep.") at 7–8.)

When Beck returned from medical leave, he was terminated. (Beck Dep. Ex. 1 – Part 3 at 74.) His termination letter indicated that Dollinger's complaint "was not the first complaint [American Crystal] had received" about Beck, and that Beck was being terminated for his "continued failures" to meet the expectations of conducting himself in a professional manner at American Crystal. (*Id.*) Prior to Dollinger's complaint, there was no plan for disciplinary action, such as termination, against Beck. (Diers Dep. at 2, 8.)

## II.    PROCEDURAL HISTORY

Beck brought this action in Minnesota state court in the Seventh Judicial District against American Crystal and Dollinger. (Compl. at 3.) The Complaint brought a federal discrimination claim under the Family and Medical Leave Act ("FMLA") against American Crystal and a state claim for tortious interference of contract against Dollinger. (Compl. ¶¶ 29–39.) The Defendants removed the action to this Court under federal question jurisdiction. (Not. Removal at 1–2.) The parties later filed a stipulation to dismiss the FMLA discrimination claim with prejudice and to dismiss American Crystal as a defendant, which the Court granted. (Order for Dismissal with Prejudice at 1, Dec. 7, 2023, Docket No. 16.) Beck then asked for permission to schedule a motion to dismiss based on 28 U.S.C. § 1367, which the Court granted. (Decl. Ryan H. Ahlberg ("Ahlberg Decl.") ¶ 4, Feb. 21, 2024, Docket No. 35.)

Dollinger proceeded to file a Motion for Summary Judgment on the remaining tortious interference of contract claim pursuant to Federal Rule of Civil Procedure 56. (Mot. Summ. J., Dec. 29, 2023, Docket No. 17.) Beck then filed a Motion to Dismiss the remaining claim without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). (Ahlberg Decl. ¶ 6; Mot. Dismiss, Jan. 19, 2024, Docket No. 22.)

## DISCUSSION

### I.   MOTION FOR SUMMARY JUDGMENT

#### A.   Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B.    Analysis

Dollinger moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the remaining tortious interference of contract claim.   The parties dispute two issues.   First, whether Beck can bring a tortious interference of contract claim against Dollinger in the first place.   Second, whether Dollinger intentionally procured Beck's termination and was justified in doing so.   The Court will analyze each issue in turn.

### 1.    Tortious Interference of Contract Against a Coworker Without Supervisory Authority

A threshold matter is whether Minnesota recognizes a tortious interference of contract claim against a coworker who had no supervisory authority over the terminated employee.   Because it is undisputed that Dollinger had no supervisory authority over Beck, Dollinger claims that the tortious interference claim fails as an unrecognized cause of action.

Minnesota law recognizes tortious interference of contract claims for at-will employment relationships.   *Nordling v. N. States Power Co.*, 478 N.W.2d 498, 505 (Minn. 1991).   But the Minnesota Supreme Court reserved the issue of whether such a claim can be brought against a coworker who lacked supervisory authority over the terminated employee.   Indeed, the Supreme Court explicitly stated that "[w]hether a tortious interference claim against a co-employee—i.e., an employee without any supervisory role

over plaintiff—might ever lie, we need not decide." *Id.* at 507.  The Minnesota Court of

Appeals later attempted to clarify *Nordling*, writing that the Supreme Court "recognized

that a cause of action generally would not lie for tortious interference against a co-

employee unless the co-employee was a supervisor who had the ability to terminate and

who acted outside the scope of his or her duties in doing so."  *Metge v. Cent.*

*Neighborhood Improvement Ass'n*, 649 N.W.2d 488, 499 (Minn. Ct. App. 2002).

In the absence of state court precedent on this issue, the Court declines to

conclude whether a tortious interference of contract claim can lie against a coworker who

lacked supervisory authority over the terminated plaintiff.  Even if such a claim could

stand, however, Beck's claim in this case cannot because, as demonstrated below, there

are no genuine issues of material fact, and the claim fails as a matter of law.

### 2.    Intentional Procurement of the Breach and Justification

Under Minnesota law, "[t]he intentional procurement of the breach of an existent

contract, without just cause or excuse, makes him who causes the breach liable for

resulting damages." *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998) (quoting

*Sorenson v. Chevrolet Motor Co.*, 214 N.W. 754, 756 (Minn. 1927)) (alteration in original).

To prove a tortious interference of contract claim, Beck must establish: "(1) the existence

of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional

procurement of its breach; (4) without justification; and (5) damages."  *Sysdyne Corp. v.*

*Rousslang*, 860 N.W.2d 347, 351 (Minn. 2015) (quoting *Furlev Sales & Assocs., Inc. v. N.*

*Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982)).  Dollinger challenges the third and fourth elements: intent and justification.

As for intent, Dollinger argues that Beck cannot establish that she caused Beck's termination because she was not directly involved in the termination decision or that she intended to cause Beck's termination.  Starting with the former argument, the intent element for tortious interference with contract involves causation, in the sense that the record must demonstrate that the defendant procured the breach of contract through their actions.  *See Furlev*, 325 N.W.2d at 25; *see also Qwest Commc'ns Co., LLC v. Free Conferencing Corp.*, 905 F.3d 1068, 1074 (8th Cir. 2018).  While it is undisputed that Dollinger was not directly involved in American Crystal's decision to terminate Beck, her report regarding the August 2022 incident certainly played a role in causing Beck's termination.  American Crystal was not planning to terminate Beck before Dollinger's report—her report kickstarted the final investigation that ultimately led to Beck's firing. Thus, the record demonstrates that Dollinger's report caused Beck's termination.

The remaining issue for intent is whether Dollinger intended to cause Beck's termination.  In this case, whether Dollinger intended to cause Beck's termination, and whether Dollinger was justified in doing so, are interconnected issues.  They both depend on whether Dollinger acted with actual malice in making her report.  Beck advances that Dollinger intended to cause Beck's termination because of her ill-will toward him and that she was unjustified in making her report because she did so with actual malice.  Beck

claims there remains a genuine dispute of material fact regarding whether Dollinger lied about the incident due to the animosity she felt toward Beck. Dollinger argues that Beck has failed to provide sufficient evidence in support of his argument to withstand summary judgment, and that, in any event, Dollinger was justified in reporting the incident given Beck's unprofessional conduct in the workplace.

"Whether the interference is justified is normally a question of fact." *Sysdyne*, 860 N.W.2d at 351. "[T]he test is what is reasonable conduct under the circumstances." *Id.* (quoting *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994)) (alteration in original). The defendant bears the burden of proving he or she was justified for the interference. *Furlev*, 325 N.W.2d at 25. "Interference is unjustifiable when it is done for the indirect purpose of injuring the plaintiff or benefiting the defendant." *Id.* at 27 (quoting *Stephenson v. Plastics Corp. of Am.*, 150 N.W.2d 668, 680 (Minn. 1967)). Notably, "[t]he general rule is that a party cannot interfere with its own contract." *Nordling*, 478 N.W.2d at 505 (citing *Bouten v. Richard Miller Homes, Inc.*, 321 N.W.2d 895, 900–01 (Minn. 1982)). This means that an employee acting pursuant to company duty is generally not individually liable for a tort if they terminate or cause the termination of another employee, so long as the person acts in good faith and believes that their actions are furthering the company's business. *Id.* at 505, 507. Indeed, "it is well settled under Minnesota law that [an employee] may be liable for such tortious interference only if his actions in causing an employee's firing were 'predominantly motivated by malice and bad faith, that is, by

personal ill-will, spite, hostility, or a deliberate intent to harm the employee.'" *Petroskey v. Lommen, Nelson, Cole, and Stageberg, P.A.*, 40 F.3d 278, 280–81 (8th Cir. 1994) (quoting *Nordling*, 478 N.W.2d at 507). "[W]hen motive or malice becomes relevant on the issue of improper interference," that malice must be actual malice. *Nordling*, 478 N.W.2d at 506.

Beck bears the burden of proof regarding actual malice, *id.* at 507, which he has failed to meet. Beck's only argument in support of his theory that Dollinger acted intentionally and without justification is that she may have lied about the August 2022 incident. *See Anick v. Bonsante*, No. A22-0197, 2022 WL 17574578, at *5 (Minn. Ct. App. Dec. 12, 2022) (reversing summary judgment after concluding that there was a disputed issue of material fact regarding whether the defendant knowingly lied about an interaction with the plaintiff). While Beck certainly disputes this material fact—whether Dollinger acted with actual malice—that dispute is not genuine. Beck has presented no evidence of malice or bad faith and points to no facts indicating that Dollinger lied about the incident. *Contra id.* His conclusory and self-serving statements are insufficient to withstand summary judgment. *See Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc). Indeed, "the record is devoid of any showing that either harbored an intent to personally cause harm to [Beck]." *Petroskey v. Lommen, Nelson, Cole & Stageberg, P.A.*, 847 F. Supp. 1437, 1450-51 (D. Minn. 1994), *aff'd* 40 F.3d 247 (8th

-10-

Cir. 1994).  Though there were no third-party witnesses to the August 2022 incident, American Crystal's independent investigation, which involved interviews with six other employees, supports Dollinger's version of events.  Without any evidentiary support for his argument, no reasonable jury could find for Beck on this claim.  Beck has failed to meet his burden of establishing a genuine dispute of material fact regarding whether Dollinger intended to cause his termination and was justified in doing so, and his tortious interference claim fails as a matter of law.  Accordingly, the Court will grant Dollinger's Motion for Summary Judgment.

## II.      MOTION TO DISMISS

In his pending Motion to Dismiss, Beck asks the Court to decline to exercise supplemental jurisdiction over his remaining state claim and dismiss this case without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).  After an opposing party has served an answer or motion for summary judgment, the plaintiff may voluntarily dismiss the action only by court order, unless the parties have stipulated to dismissal.  Fed. R. Civ. P. 41(a)(1)–(2).  "[A] dismissal pursuant to Rule 41(a)(2) is not one of right but is rather a matter for the discretion of the trial court."  *Great Rivers Coop. of SE Iowa v. Farmland Indus., Inc.*, 198 F.3d 685, 689 (8th Cir. 1999) (quotation omitted).  As Dollinger opposes Beck's Motion to Dismiss, the Court has discretion over whether to grant or deny Beck's motion.  Because the Court will grant Dollinger's summary judgment motion, it will deny Beck's Motion to Dismiss as moot.

**CONCLUSION**

Because there are no genuine disputes of material fact and Dollinger is entitled to judgment as a matter of law, the Court will grant Dollinger's Motion for Summary Judgment.  Because the Court is granting the summary judgment motion, it will deny Beck's Motion to Dismiss as moot.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Docket No. 17] is **GRANTED**;

2. Plaintiff's Complaint [Docket No. 1] is **DISMISSED with prejudice**; and

3. Plaintiff's Motion to Dismiss [Docket No. 22] is **DENIED as moot**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


DATED:  September 3, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge